**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **LECTEC CORPORATION**, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 5:08-CV-130** |
| | § | |
| **CHATTEM, INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

# O R D E R

Before the Court is the Motion *in Limine* of Defendants Chattem, Inc. ("Chattem") and

Prince of Peace Enterprises, Inc. ("Prince of Peace"). Dkt. No. 300. Also before the Court is

Plaintiff's response. Dkt. No. 310.

Before the Court is Plaintiff's Motion *in Limine*. Dkt. No. 301. Also before the Court is

Defendants' response. Dkt. No. 309.

Having considered the motions and all relevant papers and pleadings, the Court finds that

the above-mentioned motions should be GRANTED IN PART and DENIED IN PART as set

forth herein.

## I.  BACKGROUND

This is a patent case related to transdermal drug delivery, *e.g.*, medicated patches. The

accused products include Chattem's "Icy Hot" patches and Prince of Peace's "Tiger Balm"

patches. The patents in suit are United States Patents No. 5,536,263 ("'263 Patent") and

5,741,510 ("'510 Patent"), both of which have been through reexamination proceedings at

Plaintiff's request. This case has been previously set on the Court's January 2011 jury trial

1

docket.  *See* 7/13/2009 Amended Docket Control Order, Dkt. No. 102; *see also* 1/5/2009 Docket

Control Order, Dkt. No. 52.

## II.  DEFENDANTS' MOTION *IN LIMINE*

### A.  Any Testimony from Gregory Freitag

Defendants move to exclude Plaintiff's Chief Executive Officer, Gregory Freitag, from

testifying at trial.  Dkt. No. 300 at 2.  Defendants argue that even though Mr. Freitag became

CEO in June 2010, Plaintiff delayed disclosure until after the close of fact discovery and until

roughly one month before trial.  *Id.*  Defendants submit that Mr. Freitag intends to testify

regarding damages and that allowing his testimony would prejudice Defendants, who have not

had an opportunity to supplement the report of their damages expert.  *Id.*  Defendants also submit

they have not even had an opportunity to depose Mr. Freitag.  *Id.* at 3.

Plaintiff responds that it does not intend to call Mr. Freitag during its case in chief.  Dkt.

No. 310 at 3.

This *in limine* item is also the subject of Defendants' Motion to Strike Plaintiff's

Supplemental Initial Disclosures and All Testimony that May Arise Therefrom Pursuant to Fed.

R. Civ. P. 26(a), 26(e)(1), and 37(c)(1).  Dkt. No. 252.  These issues are better handled in the

context of the full briefing presented on that motion, which the Court addresses separately.

### B.  Any Testimony of Michael Wagner Relating to the Occurrence of a "Commercial Offer for Sale"

Defendants argue that the presence of a commercial offer for sale is a question of law and

that Plaintiff's damages expert, Michael Wagner, should not be allowed to opine on what

amounts to an ultimate legal issue.  Dkt. No. 300 at 3.  Plaintiff responds that Mr. Wagner's

2

testimony can properly rebut Defendants' "offer for sale" invalidity argument regarding the June 1992 Research and Development Agreement.  Dkt. No. 310 at 3.

To whatever extent Mr. Wagner has disclosed, through report or deposition testimony, opinions related to commercial offers for sale, Mr. Wagner can testify regarding those opinions, which Defendants can in turn rebut.  *See, e.g., Rohm and Haas Co. v. Brotech Corp.*, 127 F.3d 1089, 1092 (Fed. Cir. 1997) ("While an expert may testify to the ultimate issue in a case without giving the basis for that opinion, Fed. R. Evid. 704, 705, nothing in the rules requires a fact finder to accept this conclusion."); Fed. R. Evid. 704(a).  This *in limine* item is hereby DENIED.

## C.  Any Reference to Amounts of Verdicts or Judgments in Prior Cases Where Plaintiff's or Defendants' Expert Witnesses Have Provided Opinions

Defendants argue that Plaintiff "should be prohibited from introducing any verdict or judgment amounts at trial in [an] attempt to establish the reliability or quality of its experts, to attack Defendants' experts, or to establish the size of an appropriate damages award."  Dkt. No. 300 at 4.  Defendants argue that prior verdicts or judgments would be hearsay and would be unduly prejudicial.  *Id.*  Plaintiff responds that it does not intend to ask any questions related to prior verdicts or judgments and therefore does not oppose this *in limine* item.  Dkt. No. 310 at 4.

This *in limine* item is therefore hereby GRANTED as unopposed.

## D.  Any Reference to or Argument Regarding Alleged Unfair Competition

Pursuant to Federal Rule of Evidence ("Rule") 403, Defendants argue that Plaintiff's Exhibit 224, which has a page entitled "Hit List," is irrelevant, and Defendants further argue that any allegations of unfair competition are irrelevant and unduly prejudicial.  Dkt. No. 300 at 4.  In particular, Defendants move to exclude any mention of a "hit list" of competitors or any mention

3

of Chattem "targeting" Plaintiff or attempting to force Plaintiff out of business.  *Id.* at 5.

Plaintiff responds that Plaintiff's Exhibit 224, as well as other evidence regarding Chattem's purported efforts to "target" Plaintiff, is relevant to willfulness.  Dkt. No. 310 at 4. Plaintiff also argues that it is "highly probable" that but for Chattem's conduct, Plaintiff would not have lost its manufacturing contracts with Johnson and Johnson and Novartis.  *Id.* at 5.

Objections to particular exhibits should be addressed in the context of exhibit objections, not a motion *in limine*.  As to referring to a "hit list" or "targeting" more generally, such evidence may be relevant to willfulness or damages.  This *in limine* item is therefore hereby DENIED, but specific objections can nonetheless be raised pre-trial as to exhibits, as well as during trial, if appropriate.

### E.  Any Argument or Testimony that the Patents-in-Suit are Presumed Valid

Defendants argue that the presumption of validity is procedural, not substantive, and that instructing the jury on the clear and convincing burden of proof is sufficient.  Dkt. No. 300 at 5. Defendants argue that "[i]nforming the jury of both the procedural presumption of validity and the clear and convincing burden standard would only serve to confuse the jury into thinking there are two separate 'hurdles' to clear, thus severely prejudicing Defendants."  *Id.* at 6.

This Court has customarily permitted litigants to refer to the presumption of validity during trial, and the Court finds no compelling reason to reach a different result in the above-captioned case.  *See* 35 U.S.C. § 282.  This *in limine* item is hereby DENIED.

### F.  Any Evidence, Testimony, or Reference that the Defendants Have Entered into a Joint Defense Agreement

Defendants argue that, "[p]ursuant to Federal Rule of Evidence 403, [Plaintiff] should be

precluded from mentioning or referring to any alleged agreement by or among the Defendants to

cooperate in the defense of this litigation because such testimony is irrelevant, likely to confuse

and distract the jury from the issues in this litigation, and highly prejudicial to the Defendants."

Dkt. No. 300 at 6.  Plaintiff responds that it does not oppose this *in limine* item.  Dkt. No. 310

at 6.

This *in limine* item is therefore hereby GRANTED as unopposed.

## G.  Any Questioning of Potential Jurors that Would Require Them to Commit to a Particular Range of Damages

Defendants argue that attempting to commit jurors to any particular range of damages

"serves no laudable purpose" and would compromise the impartiality of the jury.  Dkt. No. 300

at 6.  Plaintiff responds that it does not oppose this *in limine* item.  Dkt. No. 310 at 6.

This *in limine* item is therefore hereby GRANTED as unopposed.

## H.  Any Mention of the Possibility or Lack of Possibility of an Injunction

Pursuant to Rules 401, 402, and 403, Defendants argue that because injunctive relief is an

issue for the Court and not the jury, telling the jury about a possible injunction would be

improper.  Dkt. No. 300 at 7.  Plaintiff agrees to exclusion of all equitable issues provided that

Defendants are similarly bound.  *See* Dkt. No. 310 at 6.  This *in limine* item is therefore hereby

GRANTED.

## I.  Any Questioning Seeking to Invoke the Assertion of Privilege

Defendants argue that any questioning calculated to invoke an assertion of privilege

would undermine the policies supporting privileges and would "confuse the jury and distract

from the real issues in this litigation."  Dkt. No. 300 at 7.

Plaintiff responds first that although Defendants have not identified any opinions of counsel on which they will rely, Plaintiff seeks to reserve its ability to question any witness that invokes an opinion of counsel as a defense to willfulness.  Dkt. No. 310 at 6.  Second, Plaintiff responds that the deposition of Nobuo Tsutsumi of Hisamitsu Pharmaceuticals contains several instances where the witness invoked attorney-client privilege based on, according to Plaintiff, inappropriate coaching by his counsel.  *Id.* at 7.

This *in limine* item is hereby GRANTED IN PART and DENIED IN PART: To the extent this *in limine* item relates to deposition testimony, it is hereby DENIED as premature because deposition designations have not yet been addressed.  As to anticipated trial testimony, any probative value of attorney-client privilege, or any questions calculated to invoke assertion of privilege, is substantially outweighed by the dangers of unfair prejudice and jury confusion.  Fed. R. Civ. P. 403.  This *in limine* item is therefore hereby GRANTED in that regard.

**J.  Any Mention or Reference to Indemnification Agreements**

Pursuant to Rules 401, 402, and 403, Defendants argue that any indemnity relationships are irrelevant to patent infringement.  Dkt. No. 300 at 7.  Plaintiff responds that "[t]he indemnification agreements show that [Plaintiff's] damage expert, Mike Wagner, was correct when he accounted for the manufacturing profits associated with the infringing products.  See [Dkt. Nos.] 273, 282.  To the extent that Defendants withdraw their objection to Mr. Wagner's consideration of manufacturing profits associated with the accused products, [Plaintiff] does not oppose Defendants Motion In Limine 'J.'" Dkt. No. 310 at 7.

This *in limine* item is hereby GRANTED.  The propriety of Mr. Wagner's consideration of manufacturing profits is the subject of Defendants' Motion to Exclude the Testimony of

Michael J. Wagner (Dkt. No. 242), which the Court addresses by separate Order.

**K.  Any Testimony, Argument, or Reference to Perceived Derogatory Comments Regarding Ethnicity or National Origin**

Defendants submit that Plaintiff's Exhibit 262 "contains comments which could be prejudicial," and Defendants argue that this, or any other language that could be perceived as derogatory, should be excluded pursuant to Rule 403.  Dkt. No. 300 at 8.  Plaintiff responds that the "ethnic slurs" at issue are probative of willfulness.  *See* Dkt. No. 310 at 8.

To the extent this *in limine* item relates to exhibits or to deposition testimony, it is hereby DENIED as premature because exhibit objections and deposition designations have not yet been addressed.  To whatever extent such exhibits or depositions designations are excluded, if any, trial testimony will be similarly limited.  Any other related objections would be more appropriately raised and addressed in context during trial, so this *in limine* item is hereby DENIED.

**L.  Any Use or Reference to Defendants' Notice of Patents that Are Not Patents-in-Suit**

Defendants cite purportedly misleading comments in Plaintiff's Exhibits 256 and 326 about "re-examined" or "re-issued" patents that are not the patents-in-suit.  Dkt. No. 300 at 8.  Defendants argue these e-mails should be excluded pursuant to Rule 403.  *Id.*  Plaintiff responds that these exhibits are probative of willfulness.  *See* Dkt. No. 310 at 9.

Because exhibit objections have not yet been addressed by the Court, this *in limine* item is hereby DENIED as premature, and the issues presented can be revisited at an appropriate time, if necessary.

**M.  Any Evidence, Testimony, or Argument Regarding an Anti-Itch Patch**

Pursuant to Rules 401, 402, and 403, Defendants move to exclude any reference to an anti-itch patch, which Defendants submit is mentioned in several of Plaintiff's exhibits.  Dkt. No. 300 at 9.  Plaintiff responds that this evidence is probative of willfulness because Chattem purportedly sent samples of Plaintiff's TheraPatch anti-itch patch to Lead Chemical, which then used the samples to develop infringing products, according to Plaintiff.  *See* Dkt. No. 310 at 10.

On balance, the probative value of Plaintiff's anti-itch patch is not substantially outweighed by the dangers of unfair prejudice or jury confusion.  *See* Fed. R. Civ. P. 403.  This *in limine* item is therefore hereby DENIED.

**N.  Any Evidence, Testimony, or Argument Relating to the Aspercreme Patch**

Defendants argue that the Aspercreme Patch is not at issue in this litigation, so Defendants move to exclude any mention of it pursuant to Rules 401, 402, and 403.  Dkt. No. 300 at 9.  Plaintiff responds that the Aspercreme patch was a failed attempt by Chattem and Lead Chemical and is therefore probative of the non-obviousness of the patents-in-suit.  Dkt. No. 310 at 10.

On balance, the probative value of the Aspercreme patch is not substantially outweighed by the dangers of unfair prejudice or jury confusion.  *See* Fed. R. Civ. P. 403.  This *in limine* item is therefore hereby DENIED.

**O.  Any Testimony or Evidence of Defendants' Size, Finances, or Worth**

Defendants argue that any discussion of Defendants' size, especially as compared to Plaintiff's size, could only create unfair sympathy for Plaintiff and is not relevant to any real issues in the case.  Dkt. No. 300 at 9-10.  Pursuant to Rule 403, Defendants move to exclude any

8

such evidence.  *Id.* at 10.  Plaintiff responds that it "will only raise the comparative size of the parties if raised by Defendants."  Dkt. No. 310 at 11.

First, enhancement is an issue that the Court can address after the jury trial if Plaintiff obtains a willfulness verdict.  Second, as to willfulness and damages, the jury will be aware, through evidence of the extent of the Defendants' operations, that one or both Defendants are relatively large companies with significant bargaining power, at least in relation to Plaintiff.  On balance, any probative value of Defendants' financial size is substantially outweighed by the danger that the jury might set damages based on Defendants' ability to pay rather than on proper evidence of damages.  Fed. R. Evid. 403.

This *in limine* item is therefore hereby GRANTED IN PART and DENIED IN PART: The Court does not exclude the size of the Defendants *relative to Plaintiff*.  Such evidence may be probative on issues such as willfulness and damages, in particular as to bargaining power in a hypothetical negotiation for purposes of determining a reasonable royalty.  This *in limine* item is otherwise hereby GRANTED.

## P.  Any Reference to Salaries or Compensation of Kenneth Yeung and/or His Wife

Pursuant to Rule 403, Defendants move to exclude as irrelevant any reference to the compensation of Prince of Peace's president, Kenneth Yeung, or his wife.  Dkt. No. 300 at 10. In particular, Defendants move to exclude any allegation that Mr. Yeung or his wife are compensated above fair market rate as part of a scheme to reduce Prince of Peace's overall tax liabilities.  *Id.*  Plaintiff responds that because Prince of Peace is a small, closely-held company, the compensation of the owners must be considered in assessing the profitability of the company. Dkt. No. 310 at 11.  Plaintiff also submits that it will not introduce evidence of the salaries of

Mr. Yeung or his wife on direct examination but will only do so if necessary on cross-examination.  *Id.* at 11.

This *in limine* item is hereby CONDITIONALLY GRANTED: Plaintiff shall not present evidence of the compensation of Mr. Yeung or his wife during Mr. Wagner's direct examination, as Plaintiff has agreed.  Dkt. No. 310 at 11.  Mr. Wagner may nonetheless testify as to their compensation if his analysis of the profitability of Prince of Peace is challenged on cross-examination.  In addition, if either Mr. Yeung or his wife testify, then Plaintiff can present evidence regarding compensation of Mr. Yeung, his wife, or both, because their compensation and their stake in Prince of Peace bears on their credibility.

## Q.  Any Reference to Lack of Seeking Opinion of Counsel Prior to Initiation of Lawsuit

Defendants submit "[i]t is undisputed that Defendants had no knowledge of the patents-in-suit prior to the initiation of the litigation."  Dkt. No. 300 at 11.  Defendants therefore argue pursuant to Rule 403 that Defendants had no duty to seek an opinion of counsel and that any suggestion to the contrary would unfairly prejudice Defendants.  *Id.*  Plaintiff responds that the failure to obtain an opinion of counsel is further evidence of Defendants' reckless wilfulness.  *See* Dkt. No. 310 at 11-12.

"The adverse inference that an opinion was or would have been unfavorable, flowing from the infringer's failure to obtain or produce an exculpatory opinion of counsel, is no longer warranted."  *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344-45 (Fed. Cir. 2004) (en banc); *see also In re Seagate Tech., LLC*, 497 F.3d 1360, 1370 (Fed. Cir. 2007); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008).  Plaintiff may not attempt to draw any adverse inference regarding willfulness from a Defendant's

failure to produce an opinion of counsel at trial.  Nonetheless, failure to produce an opinion of

counsel at trial can be considered by the finder of fact as part of the "totality of circumstances"

regarding willfulness.  *See Broadcom*, 543 F.3d at 683 and 700.[1]

Thus, Plaintiff should be permitted to introduce evidence or argument of the absence of

an opinion of counsel at trial,[2] although Plaintiff cannot submit that any adverse inference should

be drawn as to what the content of an opinion of counsel would have been.  For example,

Plaintiff cannot argue that the failure to produce an opinion of counsel at trial means that any

opinion obtained was negative or would have been negative, nor can Plaintiff present evidence or

argument that a Defendant obtained an opinion of counsel but has declined to produce it.  Any

such arguments, inferences, insinuations, or implications would be irrelevant and would put

"inappropriate burdens on the attorney-client relationship."  *In re Seagate Tech., LLC*, 497 F.3d

at 1370 (quotation omitted).

---

[1]  *See also Broadcom*, 543 F.3d at 698 (citations omitted) (emphasis added):

[I]n the context of instructions pertaining to willfulness, the district court instructed the jury as follows:

> In considering whether [the accused infringer] acted in good faith, you should consider all the circumstances, including whether or not [the accused infringer] obtained and followed the advice of a competent lawyer with regard to infringement.  The absence of a lawyer's opinion, by itself, is insufficient to support a finding of willfulness, and you may not assume that merely because a party did not obtain an opinion of counsel, the opinion would have been unfavorable.  However, *you may consider whether [the accused infringer] sought a legal opinion as one factor in assessing whether, under the totality of the circumstances, any infringement by [the accused infringer] was willful.*

This instruction comports with our holding in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge, GmbH v. Dana Corp.*, where we held that there is not "a legal duty upon a potential infringer to consult with counsel, such that failure to do so will provide an inference or evidentiary presumption that such opinion would have been negative."

[2]  *Cf. id.* at 699 ("It would be manifestly unfair to allow opinion-of-counsel evidence to serve an exculpatory function . . . and yet not permit patentees to identify failures to procure such advice as circumstantial evidence of intent to infringe.")

This *in limine* item is hereby GRANTED AS MODIFIED in accordance with the foregoing.

## R.  Any Reference to an Ingredient List Not Properly Associated with Any Accused Product

Defendants move pursuant to Rules 403 and 901 to exclude Plaintiff's Exhibits 302, 304, 305, and 307, which Plaintiff submits are ingredient lists for Prince of Peace's Tiger Balm product but which Defendants argue lack sufficient foundation.  Dkt. No. 300 at 11.  Defendants argue that Plaintiff failed to take appropriate discovery from the manufacturers of the Tiger Balm products, for which Prince of Peace is only a distributor.  *Id.* at 11.  Further, Defendants argue, Plaintiff did not test the Tiger Balm product to determine if Plaintiff's ingredient lists are accurate.  *Id.* at 12.

Plaintiff responds that the ingredient lists at issue are the only ones that correspond to the Tiger Balm accused products.  Dkt. No. 310 at 12.  Plaintiff also argues that Prince of Peace fails to contradict Plaintiff's evidence, instead relying only on "procedural tactics" and "gamesmanship."  *Id.* at 13.

Because exhibit objections have not yet been addressed by the Court, this *in limine* item is hereby DENIED as premature, and the issues presented can be revisited at an appropriate time, if necessary.

## S.  Any Attempt by Plaintiff to "Group" Products

Defendants argue, pursuant to Rule 403, that the Court should preclude Plaintiff from grouping accused products together for infringement purposes because Plaintiff bears the burden of proving infringement as to each accused product.  Dkt. No. 300 at 13.  Plaintiff responds that

12

"Defendant Chattem has indicated that its Icy Hot Back, Icy Hot XL and Icy Hot Arm, Neck and Leg products are the exact same product but for the fact that the patches are cut to different sizes. Likewise, Prince of Peace has suggested that its Tiger Balm Regular and Tiger Balm Large patches are the same, except for size." Dkt. No. 310 at 13.

Defendants' motion is premature because any argument about the sufficiency of Plaintiff's infringement presentation at trial can be more properly raised by Rule 50 motion at the close of Plaintiff's case. This *in limine* item is therefore hereby DENIED.

## T.  Any Reference to "Willful" Infringement

Defendants submit that Plaintiff has no evidence that Defendants knew of the patents-in-suit before suit was filed and therefore, according to Defendants, Plaintiff should be precluded from arguing willfulness. Dkt. No. 300 at 13. Plaintiff responds that Defendants' motion is procedural improper and that Plaintiff has ample wilfulness evidence that will be presented at trial. *See* Dkt. No. 310 at 14-15.

Defendants' motion is premature because any argument about the sufficiency of Plaintiff's willfulness presentation at trial can be more properly raised by Rule 50 motion at the close of Plaintiff's case. This *in limine* item is therefore hereby DENIED.

## U.  Any Reference to Prince of Peace "Targeting" Competitors

Defendants argue that any reference to Defendants "targeting" competitors is more unfairly prejudicial than probative and should be excluded pursuant to Rule 403. Dkt. No. 300 at 13. Plaintiff responds that it does not oppose this *in limine* item. Dkt. No. 310 at 15.

This *in limine* item is therefore hereby GRANTED as unopposed.

### V.  Any Mention or Reference to Settlement Agreements or Discussions

Pursuant to Rule 408, Defendants move to exclude any reference to "any previous defendant no longer involved with this litigation, any settlement agreements, settlement offers or any amounts of settlements with prior defendants or settlement discussions among any previous or present parties to this litigation, or the statements or conduct of any party in connection with such settlement discussions." Dkt. No. 300 at 13-14.  Plaintiff responds that Defendants intend to use various settlement licenses as part of their damages case, and Plaintiff "simply believes that the jury should see the entire story, not just the cherry picked version Defendants offer." Dkt. No. 310 at 15-16.

This *in limine* item is hereby GRANTED IN PART and DENIED IN PART: Offers of settlement and settlement negotiations should be excluded pursuant to Rule 408.  Reference to settlement agreements is permissible, however, <u>provided that the settlement at issue includes a royalty on a per-patch basis</u>. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010); *DataTreasury Corp. v. Wells Fargo & Co., et al.*, 10/5/2010 Order, C.A. No. 2:06-CV-72, Dkt. No. 2392 at 31, & 3/16/2010 Order, Dkt. No. 2052 (excluding lump sum settlements).

### W.  Any Introduction or Reference of Untimely Produced LecTec Video

Defendants submit that on December 20, 2010, Plaintiff added to its exhibit list several videos that had not previously been disclosed.  Dkt. No. 300 at 14.  Defendants submit that these videos relate to Plaintiff's marketing efforts in the late 1990s and early 2000s and, according to Defendants, are irrelevant to any issue at trial.  *Id.*  Defendants argue that these videos are both untimely and irrelevant.  *Id.* at 14-15.  Plaintiff responds that it did not have knowledge of the videos at issue, which came from a third party, until December 17, 2010.  Dkt. No. 310 at 16.

Because exhibit objections have not yet been addressed by the Court, this *in limine* item is hereby DENIED as premature, and the issues presented can be revisited at an appropriate time, if necessary.

## X.  Any Mention or Reference Regarding Chattem's Ownership or Use of Private Transportation

Defendants argue that modes of transportation, such as any corporate jet used by Chattem officers or employees, is irrelevant and would only unfairly prejudice the jury against Defendants.  Dkt. No. 300 at 15.  Plaintiff responds that it does not oppose this *in limine* item. Dkt. No. 310 at 16.

This *in limine* item is hereby GRANTED as unopposed.

## Y.  Any Mention or Reference to the Acquisition of Chattem by Sanofi Aventis

Defendants argue that the acquisition of Chattem, including the price or any other details of the acquisition, is irrelevant and would only confuse the jury.  Dkt. No. 300 at 15.  Defendants move to exclude any such references pursuant to Rules 401, 402, and 403.  *Id.*  Plaintiff responds that "it is fair for the jury to understand the identity of the parties," and Plaintiff notes that Chattem's own website indicates that it is part of Sanofi Aventis.  Dkt. No. 310 at 17.

On balance, Plaintiff can present evidence regarding Chattem's corporate structure and ownership, but the probative value of the details of the acquisition of Chattem is substantially outweighed by the dangers of unfair prejudice, jury confusion, and waste of time, unless Plaintiff can show otherwise at trial.  Fed. R. Evid. 403.  This *in limine* item is therefore hereby GRANTED.  If Plaintiff desires to present any of this evidence at trial, Plaintiff should seek permission of the Court and show any purported relevance.

## III.  PLAINTIFF'S MOTION *IN LIMINE*

### A.  Evidence of Alleged Prior Art that Was Not Timely Disclosed Under 35 U.S.C. § 282

Plaintiff argues that Defendants' disclosure of prior art pursuant to 35 U.S.C. § 282 was

due on Sunday, December 5, 2010, but that Defendants did not disclose until December 7, 2010.

Dkt. No. 301 at 2.  Plaintiff concludes that the Court should exclude any prior art not disclosed in

the report of Defendants' invalidity expert, Dr. Russell Potts.  *Id.* at 3.

Defendants respond that their invalidity contentions and expert reports, all served well

before the 35 U.S.C. § 282 deadline, gave Plaintiff ample notice of Defendants' prior art.  Dkt.

No. 309 at 2.  Defendants also note that Plaintiff identifies no particular pieces of prior art for

which it purportedly did not receive adequate notice.  *Id.* at 4.

Title 35 U.S.C. § 282 provides, in relevant part:

> [T]he party asserting invalidity or noninfringement shall give notice in the
> pleadings or otherwise in writing to the adverse party *at least thirty days before
> the trial*, of the country, number, date, and name of the patentee of any patent,
> [and] the title, date, and page numbers of any publication to be relied upon as
> anticipation of the patent in suit or . . . as showing the state of the art . . . .

Jury selection has been previously set for January 4, 2011.  *See* 7/13/2009 Amended Docket

Control Order, Dkt. No. 102; *see also* 1/5/2009 Docket Control Order, Dkt. No. 52.  Thirty days

before trial was thus December 5, 2010, which fell on a Sunday.  The deadline therefore ran

*backward* to the "next day" that was "not a Saturday, Sunday, or legal holiday," which was

December 3, 2010.  *See* Fed. R. Civ. P. 6(a)(1)(C) & (a)(5).  Defendants disclosure was therefore

four days late.

Assuming that Defendants intend to rely primarily on references disclosed in invalidity

contentions or the reports of Defendants' invalidity expert, the Court assumes that the references

16

at issue relate only to "the state of the art." 35 U.S.C. § 282. Plaintiff has not shown that

Defendants' four-day delay has significantly prejudiced Plaintiff's ability to respond to

Defendants' references regarding the state of the art. This *in limine* item is therefore hereby

DENIED.

## B. Patch Products Where the Formula and Construction Are Unknown

Plaintiff moves to exclude any reference to the Satogesic Patch and the Tiger Medicated

Plaster, as well as any reference to a September 11, 1990 letter from Food and Drug

Administration representative William Gilbertson to John Herr. Dkt. No. 301 at 3. Plaintiff

argues that Defendants have no evidence to support the underlying technical details of these

documents or references. *Id.*

Defendants respond that Plaintiff has shown no requirement that all technical aspects of a

piece of prior art must be known in order for the prior art to be admissible at trial. Dkt. No. 309

at 4. Defendants argue that Plaintiff's complaints go to weight rather than admissibility. *Id.* at 5.

Plaintiff's arguments go primarily to weight rather than admissibility. Further, exhibit

objections have not yet been addressed by the Court and can be raised at an appropriate time, if

necessary. This *in limine* item is therefore hereby DENIED.

## C. Claims of Improper Inventorship

Plaintiff moves to exclude any defense of failure to name co-inventors, arguing that

Defendants have failed to corroborate any of the purported inventor testimony on which they

rely. Dkt. No. 301 at 4.

Defendants respond that no corroboration requirement exists and, regardless, Defendants

respond that their claims of improper inventorship are supported by testimony and documents.

17

Dkt. No. 309 at 5-6.  Defendants further urge that they would have more corroborating evidence if Plaintiff had not delayed in bringing suit, and in support Defendants cite testimony of a witness that discarded documents years before suit was filed.  *Id.* at 6-7.

Plaintiff's motion is premature because any argument about the sufficiency of Defendants' inventorship presentation at trial can be raised by Rule 50 motion at the close of Defendants' case.  Also, inventorship is one of the subjects of Prince of Peace's Motion for Leave to Amend Answer and Counterclaim to Include Affirmative Defense and Counterclaim Based Upon Inequitable Conduct (Dkt. No. 226), which is better addressed separately on that briefing.

This *in limine* item is therefore hereby DENIED.

## D.  Testimony of Lead Chemical (Yoshiaki Mori)

Plaintiff moves to exclude any testimony from Lead Chemical because, according to Plaintiff, Defendants failed to make Lead Chemical available for deposition.  Dkt. No. 301 at 6. Plaintiff submits that Defendants agreed that if they intended to call a Lead Chemical witness at trial, Defendants would attempt to make Lead Chemical available for deposition before trial.  *Id.* Plaintiff argues that Defendants failed to make any such efforts but now have added Lead Chemical to their witness list.  *Id.*

Defendants respond that "Defendant Chattem will not be calling any witness from Lead Chemical during trial," so Defendants submit that this *in limine* item is moot.  Dkt. No. 309 at 7.

This *in limine* item is hereby DENIED AS MOOT.

## E.  Alternate Invalidity Theories Not Relied Upon by Dr. Russell Potts

Plaintiff submits that Dr. Potts declined to opine on several theories asserted in

Defendants' invalidity contentions and that Dr. Potts should accordingly be precluded from testifying regarding any of those theories at trial.  Dkt. No. 301 at 7.

Defendants respond that Dr. Potts stated in his invalidity report that he relied on Defendants' invalidity contentions, which are thus incorporated into report.  Dkt. No. 309 at 7. Defendants argue that Plaintiff has had ample notice of the contentions set forth in Defendants' invalidity contentions, as well as Dr. Potts' reliance on them.  *Id.* at 8.

Expert testimony is confined by the disclosure requirements of Federal Rule of Civil Procedure 26.  This *in limine* item therefore amounts to a request for an Order directing Defendants not to violate the Federal Rules of Civil Procedure.  Instead, the Court's usual practice is to take up, during trial, any specific objections to expert testimony that is purportedly outside the scope of the expert's report.  This *in limine* item is therefore hereby DENIED.

## F.  Inequitable Conduct

Plaintiff argues that because inequitable conduct is an issue for the Court, not the jury, the Court should exclude any reference to inequitable conduct, including any allegations regarding failure to properly name inventors.  Dkt. No. 301 at 7.

Defendants respond that "[a]lthough Defendants do not contend that the ultimate conclusion of whether or not [Plaintiff's] patents are unenforceable for inequitable conduct is a fact issue for the jury, [Plaintiff's] actions in obtaining and maintaining its patents by hiding prior art and failing to disclose inventors upends the presumption of validity."  Dkt. No. 309 at 9.

Defendants present no authority for this seemingly novel argument that inequitable conduct, despite being an enforceability issue for the Court, is proper for the jury to weigh in determining whether the presumption of validity has been overcome.  The Court rejects

Defendants' argument in this regard.

This *in limine* item is hereby GRANTED IN PART and DENIED IN PART: Improper

inventorship is an issue for the jury to consider.  *See* National Jury Instruction Project, Model

Patent Jury Instructions, § 5.8 (2009).  Evidence that is relevant to both inventorship and

inequitable conduct can therefore be presented to the jury.  Any inequitable conduct argument, as

well as any evidence that relates only to inequitable conduct allegations, however, will be

addressed by a separate bench trial after the jury trial and should not be presented to the jury.

## G.  Laches and Equitable Estoppel

Plaintiff argues that because laches and equitable estoppel will be tried to the Court and

not the jury, the Court should exclude any reference to laches or equitable estoppel.  Dkt. No.

301 at 7.

Defendants respond that they should be permitted to use Plaintiff's delay in filing suit to

explain to the jury why many witnesses have difficulty recalling relevant events, many of which

occurred in the 1990s.  Dkt. No. 309 at 10.  Defendants similarly argue that they should be

permitted to explain that many documents were discarded between the time of relevant events

and the time Plaintiff filed suit.  *Id.* at 11.  Defendants further argue that Plaintiff's delay cuts

against Plaintiff's willfulness case.  *Id.*

This *in limine* item is hereby GRANTED IN PART and DENIED IN PART.

Specifically, this *in limine* item is hereby DENIED as to evidence of when Plaintiff filed suit,

when relevant events occurred, and when purportedly relevant documents were discarded.  This

*in limine* item is otherwise hereby GRANTED because any probative value of evidence on laches

or estoppel is substantially outweighed by the dangers of unfair prejudice, jury confusion, and

20

waste of time.  Fed. R. Evid. 403.  <u>Defendants are therefore cautioned not to attempt to argue</u> <u>laches or estoppel to the jury.</u>  If Defendants believe that any particular evidence should nonetheless be admissible, Defendants can approach the bench to seek permission to present such evidence.

**H.  Interaction Between Counsel for LecTec and its Former Employees or Distributors**

Plaintiff submits: "Discussions between counsel and a deponent prior to a deposition should be excluded because it has no probative value.  This includes, but is not limited to[,] designations found in the deposition transcripts of Kathleen Billings, Elisabeth Sjoblom Urmann, David Rolf, and Judd Berlin."  Dkt. No. 301 at 8.  Defendants respond that Plaintiff's purported attempts to manipulate testimony are relevant to the credibility of those witnesses' testimony. Dkt. No. 309 at 12.

This *in limine* item amounts to an objection to deposition designations and should be handled in that context rather on a motion *in limine*.  This *in limine* item is therefore hereby DENIED.

**I.  Certain Evidence Related to the 1990 Aqua-Patch**

Plaintiff moves to exclude Aqua-Patch-related documents dated after the filing of the patents-in-suit.  Dkt. No. 301 at 8.  Plaintiff also moves to exclude the answers to purportedly leading questions asked of Hisamitsu Pharmaceuticals' representative, as well as questions that purportedly lacked foundation.  *Id.* at 9.  Plaintiff further moves to exclude a sample of the 1990 Aqua-Patch, which Plaintiff argues has deteriorated and is not representative of the actual 1990 Aqua-Patch.  *Id.* at 10.

Defendants respond that: (1) the dates of documents go to weight rather than

admissibility; (2) leading questions were sometimes necessary to overcome the language barrier with the Japanese witness for Hisamitsu; and (3) the representativeness of the 1990 Aqua-Patch sample is a factual issue and excluding it would reward Plaintiff for delay in filing suit.  Dkt. No. 309 at 12-15.

First, the issue of whether the Aqua-Patch design changed during the 1990s is a factual dispute on which the jury can consider competing evidence.  Second, Plaintiff's arguments regarding the deposition of the Hisamitsu representative amount to objections to deposition designations and should be handled in that context rather than on a motion *in limine*.  Third, the purported deterioration of the 1990 Aqua-Patch sample is a factual dispute on which the jury can consider competing evidence.  Finally, Plaintiff's request to exclude documents dated after the filing of the patents-in-suit is premature because the Court has not yet addressed exhibit objections.

This *in limine* item is therefore hereby DENIED.

## IV.  CONCLUSION

Defendants' Motion *in Limine* (Dkt. No. 300) is hereby GRANTED IN PART and DENIED IN PART in accordance with the foregoing.

Plaintiff's Motion *in Limine* (Dkt. No. 301) is hereby GRANTED IN PART and DENIED IN PART in accordance with the foregoing.          **IT IS SO ORDERED.**

**SIGNED this 4th day of January, 2011.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE